IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CHRISTOPHER TONY HEGGEBO,

        Defendant.

No. CR10-0016

REPORT AND RECOMMENDATION

———————————

**TABLE OF CONTENTS**

I.     **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    **PROCEDURAL HISTORY**. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   **RELEVANT FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.    *February 8, 2010 State Court Search Warrant*. . . . . . . . . . . . . . . 3
     B.    *February 16, 2010 State Court Search Warrant*. . . . . . . . . . . . . . 4
     C.    *March 30, 2010 Federal Court Search Warrant*. . . . . . . . . . . . . . 6

IV.   **ANALYSIS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     A.    *Was the Motion to Suppress Timely Filed?*. . . . . . . . . . . . . . . . 8
     B.    *Was the February 8 Search Warrant Supported By*
         *Probable Cause?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     C.    *Was the February 16 Search Warrant Supported By*
         *Probable Cause?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     D.    *Was the February 16 Search Warrant Properly Executed?*. . . . . . . 16
     E.    *Was the March 30 Search Warrant Supported By*
         *Probable Cause?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     F.    *Does the Leon Good Faith Exception Apply?*. . . . . . . . . . . . . . 20
         1.    *Did the Affidavit for the Federal Warrant Knowingly Include*
             *False Statements?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         2.    *Were the State Search Warrants "So Lacking" in Probable*
             *Cause?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

V.    **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.   **RECOMMENDATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# I. INTRODUCTION

On the 21st day of June 2010, this matter came on for hearing on the Motion to Suppress (docket number 31) filed by the Defendant on June 2, 2010. The Government was represented by Assistant United States Attorney Peter E. Deegan, Jr. Defendant Christopher Tony Heggebo appeared personally and was represented by his attorney, Stephen A. Swift.

# II. PROCEDURAL HISTORY

On March 16, 2010, Defendant Christopher Tony Heggebo was charged by Indictment (docket number 2) with one count of child exploitation. Defendant entered a plea of not guilty and trial was scheduled for May 17, 2010. On April 19, 2010, Defendant filed a Motion to Dismiss (docket number 9). A Superseding Indictment (docket number 18) was filed on May 5, 2010, adding a second count of child exploitation and a third count of possession of child pornography. On May 11, 2010, the trial was continued to June 28, 2010. *See* docket number 25.

On May 12, 2010, the district court entered an Order denying Defendant's motion to dismiss. *See* docket number 26. On May 18, 2010, Defendant filed a Second Motion to Dismiss (docket number 27). On June 2, 2010, the district court entered an Order denying Defendant's second motion to dismiss. *See* docket number 29. On June 7, 2010, the trial was continued a second time to August 9, 2010. *See* docket number 35. On June 2, 2010, Defendant filed the instant Motion to Suppress Evidence (docket number 31).

On June 21, 2010, the Government filed an Information (docket number 43) charging Defendant with one count of possession of child pornography. On the same date, Defendant filed a notice on intent to plead guilty to the Information, and waived prosecution by indictment. *See* docket numbers 44 and 45. On July 1, 2010, Defendant appeared before the undersigned magistrate judge and entered conditional pleas of guilty to Count 2 of the Superseding Indictment (child exploitation) and Count 1 of the

Information (possession of child pornography).[1]  If the Court grants the motion to suppress, the Defendant may withdraw his guilty plea.

## III.  RELEVANT FACTS

### A.  February 8, 2010 State Court Search Warrant

On February 8, 2010, Officer Amy Ford of the Anamosa Police Department submitted an Application for Search Warrant to Jones County Judicial Magistrate Matt McQuillen.  In her Application, Officer Ford requested authority to search a residence located on Deerwood Drive in Anamosa, Iowa.[2]  The Application for Search Warrant was supported by "Attachment A" prepared by Officer Ford.

According to Attachment A, Officer Ford was contacted on February 6, 2010 by Officer Hillebrand of the Anamosa Police Department.  Officer Ford described the progression of events as follows:

> On Saturday February 6, 2010, I, Officer Ford, was contacted at home by Officer Hillbrand [sic] in regards to a possible sexual abuse investigation.  Officer Hillebrand advised a confidential informant had contacted and informed him of a situation that had taken place in Anamosa.  Officer Hillebrand provided the name and telephone number of the CI.  At approximately 1956hrs, I, Officer Ford, telephoned this confidential informant to learn of the possible incident.

Application for Search Warrant, Attachment A (Government's Exhibit 1).

Attachment A goes on to describe the statements made by the confidential informant ("CI") to Officer Ford.  The CI told Ford that she was a friend of Defendant's live-in girlfriend, Ashley Etten.  The CI said she received a call from a crying Etten, who said she had discovered a video camera in the closet of the bedroom she shared with Defendant.

---

[1] The deadline for Defendant to object to the Report and Recommendation is July 15, 2010.

[2] While the specific street address is identified in the Application and the Search Warrant, it will not be listed here, pursuant to Local Rule 10.h.13.  Defendant does not argue that the Application or the Search Warrant fails to properly identify the residence.

The video camera had been pointed to the bed, and Etten said she found a video on the camera of a "naked little girl" she knew had stayed at their residence on an earlier date.

The CI went to Defendant and Etten's residence to view the video. The CI stated the video showed a "young female" lying on the bed without any underwear on. The young female was described as "having her fingers by her private area and another subject's hand [was] moving her fingers around." The CI did not see the young female's face, but described her as having "tiny fingers, pink fingernail polish and not fully developed in the private area." The CI stopped watching, but told Officer Ford that Etten continued to watch and stated "Oh my God he is using my vibrator on her." The CI left the residence and shortly thereafter received a text message from Etten saying she made Defendant delete the video.

The Application also included an Informant's Attachment, a form completed by Officer Ford, listing reasons supporting the CI's credibility.[3] The Search Warrant was signed by Judicial Magistrate Matt McQuillen. The warrant authorized a search of Defendant's residence and specifically authorized officers to search for and seize "all cameras, recording devices, memory cards/sticks, photographs of children and minors being photographed in a sexual content, [and] VHS and DVD pornography." That same day, February 8, 2010, the warrant was executed on the residence listed on the Search Warrant. One of the items seized was a JVC video camera from a top shelf of a closet in the master bedroom.

### B. February 16, 2010 State Court Search Warrant

On February 16, 2010, Officer Ford submitted a second Application for Search Warrant (Government's Exhibit 2) to Judicial Magistrate Matt McQuillen. Officer Ford

---

[3] Officer Ford indicated that the CI was credible because he/she is a regularly employed, mature individual of a truthful reputation, with no criminal record, and no motivation to falsify the information. In his warrant endorsement, Judicial Magistrate Matt McQuillen determined the CI's information to be credible because he/she had "no apparent motivation to be untruthful."

requested authority to search the contents of the JVC video camera seized from Defendant's residence pursuant to the state court Search Warrant executed on February 8, 2010. The Application was supported by "Attachment B" prepared by Officer Ford.

Attachment B contained the statements made by the CI used to obtain the February 8 warrant.[4] Attachment B also included statements made by Etten to Officer Ford in an interview following the warrant execution. Attachment B describes the interview as follows:

> An interview with both Etten and Heggebo confirmed there were images on the camera we had seized from the bedroom closet. Etten admitted the images on the JVC camcorder had been deleted by her on or about Saturday February 6, 2010. Etten admitted seeing the images and identified the subjects in the images as Christopher Heggebo and [Victim #2], the 8year [sic] old girl that had stayed with Etten and Heggebo for a weekend in January 2010.

Application for Search Warrant (Government's Exhibit 2), Attachment B, at 6, ¶ 6. Additionally, Attachment B included a form supporting Etten's credibility.[5]

After obtaining the Search Warrant to search the video camera, the camera was sent to Detective Sergeant Kent Steenblock of the Linn County Sheriff's Office. Detective Steenblock knew that Etten admitted the video at issue had been deleted, and he was tasked with recovering the deleted data from the camcorder. Detective Steenblock created an image of the camera's hard drive in an attempt to recover the digital data. He determined that the deleted digital data contained roughly 14 video files, but was unable to recover and view the videos.

---

[4] The February 16, 2010 warrant application did not include an attachment detailing the CI's credibility.

[5] Officer Ford indicated that Etten was regularly employed with no criminal record and no motivation to falsify information. In his endorsement, Judicial Magistrate Matt McQuillen also indicated Etten had "no apparent motivation to falsify information."

After exhausting his capabilities, Detective Steenblock contacted Jim Baker, the President and Chief Technical Officer of Perlustro software company. Perlustro manufactures the forensic software Detective Steenblock was using in his analysis, and Steenblock testified that he received assistance from Perlustro in recovering data on many previous occasions. Working together over the telephone, Detective Steenblock and Baker created another image of the hard drive, which Detective Steenblock then password-encrypted and mailed to Baker in Mississippi. Baker was able to perform a "salvage operation" on the digital data and also identified numerous video file remnants. After a few days, Baker was able to convert these remnants into viewable media files. Baker notified Detective Steenblock of this development on March 27, 2010, and immediately forwarded the converted files back to Detective Steenblock. The converted files contained five separate videos with multiple video segments on each individual video. *See* Detective Steenblock's Supplemental Report (Government's Exhibit 2) at 13-14.

### C. March 30, 2010 Federal Court Search Warrant

On March 10, 2010, during the time Detective Steenblock was attempting to recover the deleted images from the seized camcorder, Defendant was arrested on a federal charge of production of child pornography in violation of 18 U.S.C. § 2251(a).

On March 30, 2010, Officer Ford submitted an Application and Affidavit for a Search Warrant (Government's Exhibit 3) to the undersigned Magistrate Judge. The Application requested authority to search a cellular phone that had been turned over to Officer Ford in connection with her investigation of Defendant.

The Affidavit states that on March 19, 2010, Officer Ford was contacted by Jones County Deputy CJ Sullivan regarding a cell phone he had received from Ryan Pearson, an Anamosa, Iowa resident. Pearson told Deputy Sullivan that he found the cell phone the previous fall in the parking lot of the Wal Mart in Anamosa, but had put it in the back of his truck and forgotten about it. According to Pearson, his wife was cleaning the truck and found the phone. The affidavit of Officer Jones states that Pearson then looked

through the media content stored on the phone and found a video of "an older man videotaping a naked, prepubescent minor girl in the shower." In his written statement to law enforcement, Pearson described the video as an "older man videotaping a girl in the show [sic]." (Defendant's Exhibit A-11.) That is, Pearson's written statement does not state that the girl was naked or prepubescent.

The Affidavit also explains why Deputy Sullivan decided to forward the cell phone to Officer Ford. Officer Ford's Affidavit states, in pertinent part:

> Deputy Sullivan told me that Pearson knew some of the contacts listed in the phonebook as people who worked at Wal Mart in Anamosa. Pearson called a relative who also worked at Wal Mart in Anamosa. The relative told Pearson about an ongoing investigation with a former Wal Mart employee involving child pornography. Deputy Sullivan stated Pearson believed the older male on the video within the phone was this subject, but Pearson did not know him personally. Pearson then gave the phone to Deputy Sullivan.
>
> Deputy Sullivan was familiar with a child pornography case I was working involving Christopher Heggebo, a former employee of Wal Mart in Anamosa, and brought the phone to me at the Anamosa Police Department.

Application and Affidavit for Search Warrant (Government's Exhibit 3) at 2, ¶ 4-5. Officer Ford met with Deputy Sullivan on March 19, 2010, and retrieved the cell phone. At that time, Deputy Sullivan also provided Officer Ford with statements Pearson made regarding the contents of the phone.

On March 30, 2010, Officer Ford spoke with Pearson on the phone and confirmed his report to Deputy Sullivan, as well as the content of his written statement. Officer Ford prepared a supplemental report, in which she stated that she had viewed an image on the phone that was "consistent with what Pearson had described of a young girl naked in the shower" and "consistent with the definition of child pornography." (Defendant's Exhibit A-10.)

In her Affidavit and Application for the Search Warrant, Officer Ford recounted the statements Pearson made regarding the video on the cell phone. Officer Ford stated that Pearson observed a video "of an older man videotaping a naked, prepubescent minor girl in the shower." At the instant hearing, Officer Ford testified she used the phrase "prepubescent minor girl" in her Application and Affidavit for the Search Warrant because:

> Deputy C.J. Sullivan had obtained the phone from Pearson, and when Deputy Sullivan provided me with the phone, he had told me he had been told by Pearson that there was a little girl in this video. Deputy Sullivan asked Pearson how little, and Pearson stated that she did not have any pubic hair.

The Search Warrant was obtained on March 30, 2010, and on April 2, 2010, officers searched the contents of the cell phone. Twelve video files and 132 image files were retrieved from the cell phone. *See* Return on the Search Warrant (Government's Exhibit 3).

## IV. ANALYSIS

### A. Was the Motion to Suppress Timely Filed?

Preliminarily, the Government raises an issue as to the timeliness of Defendant's motion to suppress with regard to the search of Defendant's residence.[6] Specifically, the Government argues that the Criminal Trial Scheduling Order (docket number 8), requires Defendant's motion to suppress to be filed within 28 days of his initial arraignment. Defendant was first arraigned on March 22, 2010. Therefore, to comply with the Criminal Trial Scheduling Order, Defendant's motion to suppress was due by April 19, 2010. The instant motion was not filed until June 2, some 44 days later. The Government asserts:

> While other charges were brought, and additional evidence obtained, after defendant's first arraignment, the search of

---

[6] The Government does not appear, however, to challenge the timeliness of Defendant's motion to suppress with regard to the search of the video camera or cellular phone.

> defendant's residence and recovery of the JVC video camera
> were known to defendant (and known to be part of the
> evidentiary basis for the original count of production of child
> pornography) well in advance of the deadline for motions to
> suppress. On this basis, defendant's challenge to the search of
> his residence should be denied.

*See* Government's Memorandum in Support of Government's Response to Defendant's
Motion to Suppress Evidence (docket number 38-1) at 8.

Federal Rule of Criminal Procedure 12(e) provides that "[a] party waives any
Rule 12(b)(3) defense . . . not raised by the deadline the court sets under Rule 12(c)[.] .
. . For good cause, the court may grant relief from the waiver." *Id.* Here, the
Superseding Indictment was not filed until May 5, sixteen days *after* the pretrial motion
deadline provided in the Criminal Trial Scheduling Order. Furthermore, it appears
Defendant waited to file his motion to suppress until after the district court ruled on his
motions to dismiss. In fact, Defendant filed his motion to suppress on the same date that
the district court denied his second motion to dismiss. Arguably, some of the issues
identified in the instant motion could have been raised by Defendant prior to the initial
motions deadline. Based on the unique circumstances of this case, however, the Court
finds good cause for the filing of the motion to suppress outside the deadline established
by the Criminal Trial Scheduling Order. *See* FED. R. CRIM. P. 12(e); *United States v.
Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) (providing that pursuant to FED. R. CRIM. P.
12(e), a court, upon a showing of "good cause," may grant relief from the waiver).

### B. Was the February 8 Search Warrant Supported By Probable Cause?

The Fourth Amendment to the United States Constitution protects persons and their
houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon
probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making
a probable cause determination, "[t]he task of the issuing magistrate is simply to make a
practical, common-sense decision whether, given all the circumstances set forth in the
affidavit before him, including the 'veracity' and 'basis of knowledge' of persons

supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

Defendant argues that the February 8 Search Warrant lacked probable cause because the Application for Search Warrant did not sufficiently describe the nature of the sexual activity alleged to be on the video at Defendant's residence. Specifically, Defendant contends that the CI's description of the conduct on the video was not explicit enough to provide probable cause for the warrant. Defendant asserts that the description needed to have been sufficiently detailed for a judge or magistrate to find that there was a "fair probability" the video contained images of minor engaged in "sexually explicit conduct," as defined by 18 U.S.C. § 2256(2), so as to constitute "child pornography" pursuant to 18 U.S.C. § 2256(8).

As Defendant points out, "lascivious exhibition of the genitals or pubic area of any person"[7] is the only "sexually explicit conduct" that potentially could have been described in Officer Ford's Application for Search Warrant.[8] As such, the relevant inquiry is whether Officer Ford's Affidavit would support a finding of a "fair probability" that a search of the defendant's residence would yield a video depicting a minor engaged in the "lascivious exhibition of the genitals or pubic area of any person."[9] *See United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) ("To withstand review, we must determine that the warrant application made a sufficient showing that there was probable cause for the magistrate to believe that the pictures likely to be found on [the defendant's] computer depicted (1) sexually explicit conduct; and (2) a minor engaged in that conduct.").

Contrary to the Defendant's assertions, the Eighth Circuit Court of Appeals does not have a highly restrictive standard for the description necessary to support a finding of probable cause. While some courts require a "detailed description" of the image or video at issue,[10] the Eighth Circuit Court of Appeals has sustained probable cause findings based

---

[7] 18 U.S.C. § 2256(2)(B)(iii).

[8] Other "sexually explicit conduct" includes (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal; (b) bestiality; (c) masturbation; or (d) sadistic or masochistic abuse. 18 U.S.C. § 2256(2)(B)(i)-(ii).

[9] The Defendant does not appear to dispute that probable cause existed to believe the female in the alleged video was a minor. Nonetheless, the Court finds that there was probable cause to believe the subject was a minor. The Affidavit includes statements from the CI that the subject was a "young female" with "tiny fingers" who was "not fully developed in the private area." *See* Application and Affidavit for Search Warrant (Government's Exhibit 1), Attachment A at 3, ¶ 3.

[10] Two circuits have held that a judge or magistrate must have a factual, detailed description of any image or video to support a finding of probable cause. *See United States v. Battershell*, 457 F.3d 1048, 1051-53 (9th Cir. 2006) (requiring that an officer either attach the allegedly lascivious material or provide a sufficiently detailed description),
(continued...)

on more categorical descriptions of the conduct in the videos or images. *See Grant*, 490 F.3d at 631-33.

Specifically, in *Grant*, a computer technician discovered what he described to the police as "child pornography" on the defendant's computer. The investigating officer included this statement in his affidavit for a search warrant, providing no description of the images and stating only that the computer technician "'found pornography on several computers but believed that what he found the [defendants'] computer to be child pornography.'" *Id.* at 630 (quotation omitted). The Eighth Circuit determined that the investigating officer's use of the phrase "child pornography" in his affidavit, without a detailed description of the images, was nonetheless sufficient for a reasonable magistrate to find probable cause to search the computer. *Id.* at 632. Specifically, the Eighth Circuit found that:

> [The computer technician], by virtue of his experience as a computer repairman, was 'uniquely able, and properly motivated, to distinguish between child pornography and lawful images. [The computer technician's superior] emphasized to [the police officer] that the images [the computer technician] stated that he observed on the [defendants'] computer were disturbing and unlike any pornographic images [he] had observed on computers in the past. [The computer technician] distinguished between 'adult' and 'child' pornography and specifically characterized the images on the [defendants'] computer as child pornography. [The police officer's] affidavit in support of the search warrant related each of these facts to [the judge], and we conclude that the affidavit was sufficient to establish probable cause for the issuance of the search warrant.

*Id.* (citations omitted); *see also United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir. 2002) (stating that "graphic files depicting minors engaged in sexually explicit conduct"

---

[10] (...continued)
*and United States v. Syphers*, 426 F.3d 461, 465 (1st Cir. 2005) (requiring a detailed description if copies of the images cannot be obtained and presented to the magistrate).

was a sufficient description for a finding of probable cause); *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993) (holding that the term "child pornography" when used in the affidavit and warrant application was not so uncertain as to make the warrant fatally defective).

Here, the description of the explicit sexual conduct comes from the statements made by the CI to Officer Ford, which Officer Ford then repeated in her Affidavit and Application for Search Warrant. Officer Ford described the conduct depicted on the video, as explained to her by the CI, as follows:

> The [CI and Etten] witnessed a young female lying on the bed without any underwear on. The CI described the young female as having her fingers by her private area and another subject's hand moving her finger around. The CI . . . was able to describe the female as . . . not fully developed in the private area.

Affidavit and Application for Search Warrant (Government's Exhibit 1), Attachment A at 3, ¶ 3. After the CI stopped watching the video, Etten continued watching and stated to the CI, "Oh my God he is using my vibrator on her." *Id.*

Given the totality of the circumstances set forth in the Application for Search Warrant, including the Affidavit, the Court finds that Officer Ford's description of the conduct the CI viewed on the video in the Defendant's residence was sufficient to establish probable cause for the issuance of the search warrant. *See Grant*, 490 F.3d at 632. Officer Ford did not merely state that the video contained "child pornography" or a "minor engaged in sexually explicit conduct," although such summary descriptions may have complied with the Eighth Circuit standard found in *Grant*. Rather, Officer Ford provided the magistrate with a specific description of the conduct on the video: a young female lying on a bed without any underwear on, the young girl's hand near her "private area," her fingers being manipulated by another hand, and the apparent use of a vibrator. Officer Ford's specific description of the conduct on the video clearly supported a finding by the magistrate that there was a "fair probability" that a search of the defendant's

residence would yield a video depicting the "lascivious exhibition of the genitals or pubic area" of a minor. Accordingly, the Court finds that probable cause existed for the issuance of the February 8, 2010 Search Warrant.

### C. Was the February 16 Search Warrant Supported By Probable Cause?

The February 16, 2010 Search Warrant Application requested authority to search the contents of the JVC video camera seized from Defendant's residence pursuant to the Search Warrant executed on February 8, 2010. The Application was supported by "Attachment B" prepared by Officer Ford. Defendant argues that the February 16 Search Warrant lacked probable cause because information provided by a CI contained in Attachment B was not corroborated, and did not provide a credibility finding for the CI.

Attachment B fully incorporated all of the information reported to Officer Ford by the CI contained in Attachment A of the February 8 Search Warrant Application. *Compare* Government's Exhibit 1 at 3 and Government's Exhibit 2 at 6. However, unlike Attachment A from the February 8 Search Warrant Application, Attachment B provides no information regarding the reliability of the CI. *Compare* Government's Exhibit 1 at 4 with Government's Exhibit 2. Attachment B also included statements made by Ashley Etten, Defendant's girlfriend, to Officer Ford in an interview following the warrant execution. Attachment B provided information regarding Etten's reliability. *See* Government's Exhibit 2 at 5.

When an affidavit supporting a search warrant is "based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996)). Furthermore, when determining whether the totality of the circumstances supports a finding of probable cause, courts may consider whether the information supplied by the informant is corroborated by other information known to law enforcement. *United States v. Carter*, 413 F.3d 712, 714 (8th Cir. 2005) ("A premium

is indeed placed on corroboration of the tip by independent evidence and evidence of past reliability in cases where the statements of a confidential informant provide the basis for probable cause."). "It is well established that 'even the corroboration of minor, innocent details can suffice to establish probable cause.'" *Solomon*, 432 F.2d at 828 (quoting *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001)).

Here, according to Officer Ford's affidavit in support of the February 16 search warrant, the CI reported a phone call from Etten, informing the CI that Etten found a video camera in the closet of the bedroom Etten shared with Defendant. Etten told the CI that there was video of a "naked little girl" on the video camera. Etten also told the CI that after viewing the video, she deleted it from the video camera or had Defendant delete it from the video camera. This information was corroborated by law enforcement executing a search warrant on Defendant's and Etten's residence on February 8, 2010. On that date, law enforcement officers seized a video camera from Defendant's and Etten's bedroom closet. Law enforcement officers also interviewed Defendant and Etten and confirmed that the video camera contained images of a young girl, and that those images were deleted on or about February 6, 2010. It is also noteworthy that the judicial magistrate who issued the February 8, 2010 search warrant also issued the February 16, 2010 search warrant. Therefore, the judicial magistrate was familiar with the information reported by the CI from the February 8, 2010, which he had already found credible and reliable. *See* Government's Exhibit 1 at 5.

Given all of the circumstances set forth in the Affidavit, the Court concludes that there was a "fair probability" that evidence of a crime could be found on the video camera. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The CI reported that a video camera with video of a "naked little girl" was located in Defendant's bedroom closet. Law enforcement independently corroborated that evidence by seizing the video camera from Defendant's bedroom closet during the execution of a search warrant on February 8, 2010. Law enforcement officers also interviewed Defendant and Etten and confirmed that the

video camera contained images of a young girl, and that those images were deleted on or about February 6, 2010. Applying a "common-sense approach," the Court concludes that the details corroborated by law enforcement were sufficient to establish the CI's reliability, veracity, and basis of knowledge. *Grant*, 490 F.3d at 632. In summary, the Court concludes that the state court Search Warrant issued on February 16, 2010, was supported by probable cause.[11]

### D. Was the February 16 Search Warrant Properly Executed?

Defendant argues that the February 16, 2010, Search Warrant was not properly executed. In executing the warrant to search the contents of the video camera, Detective Steenblock made a copy of the disk image and sent it to be analyzed by Jim Baker, President and Chief Technical Officer of the software company Perlustro, which manufactures the forensic software utilized by the Linn County Sheriff's Office. Defendant contends that the warrant was not properly executed because Mr. Baker performed his data recovery outside the state and outside the presence of a law enforcement officer, in violation of Iowa Code § 808.5.

Whether or not the search violated the Iowa Code is irrelevant for the purposes of this motion to suppress. Federal courts in federal prosecutions do not suppress evidence seized by the state in compliance with the Fourth Amendment, even if the seizure violated state law. *United States v. Bach* 310 F.3d 1063, 1066 (8th Cir. 2002) (citing *United States v. Moore*, 956 F.2d 843, 847 (8th Cir. 1992)); *see also United States v. Burtton*, 599 F.3d 823, 828 (8th Cir. 2010) (generally, federal courts do not look to state statutes in assessing the validity of a seizure under the Fourth Amendment); *United States v. Appelquist*, 145 F.3d 976, 978 (8th Cir. 1998) (the general rule is that "federal courts do not suppress

---

[11] The Government argues that a search of the contents of the video camera is permitted under the February 8 search warrant and, therefore, the February 16 search warrant was unnecessary. Since the February 16 warrant was valid, I believe it is unnecessary to address this issue.

evidence seized by state officers in conformity with the Fourth Amendment because of state law violations).

Therefore, the relevant inquiry is not whether the February 16 Warrant execution violated the Iowa Code, but whether it violated the Fourth Amendment. The Fourth Amendment is governed by a "reasonableness" standard that is flexible and "should not be read to mandate rigid rules that ignore countervailing law enforcement interests." *Bach*, 310 F.3d at 1067 (citing *United States v. Murphy*, 69 F.3d 237, 243 (8th Cir. 1995)). In *Bach*, a search warrant authorized law enforcement officers to collect information contained in the Yahoo! email accounts of the defendant and an alleged victim. 310 F.3d at 1067. The officers executing the warrant faxed it to Yahoo! technicians, who collected the information and sent it back to the officers. *Id*. The defendant moved to suppress the information gathered from Yahoo! servers because the information had been obtained by Yahoo! technicians outside the presence of a police officer. *Id*.

In denying the defendant's motion to suppress, the Eighth Circuit recognized that "[t]he Fourth Amendment does not explicitly require official presence during a warrant's execution, therefore it is not an automatic violation if no officer is present during a search." *Id*. at 1066-67. Rather, "official presence should simply be one of many factors considered in determining the reasonableness of the execution of a search warrant." *Id*. at 1067.

> We consider several factors in this case to determine whether the search and seizure of Bach's e-mail from Yahoo!'s server by Yahoo! technicians violated Bach's Fourth Amendment rights, including the fact that no warrant was physically "served," no persons or premises were searched in the traditional sense, and there was no confrontation between Yahoo! technicians and Bach. . . . Other factors crucial to our decision include: (1) the actual physical presence of an officer would not have aided the search (in fact may have hindered it); (2) the technical expertise of Yahoo!'s technicians far outweighs that of the officers; (3) the items "seized" were located on Yahoo!'s property; (4) there was a warrant signed

> by a judge authorizing the search; and (5) the officers complied with the provisions of the Electronic Communications Privacy Act, 18 U.S.C. § 2701.

*Id.* With these factors in mind, the Eighth Circuit found the search of Yahoo! servers by Yahoo! technicians without the presence of an officer was reasonable under the Fourth Amendment. *Id.* at 1069.

The present case is analogous to *Bach*. The search in this case involved the retrieval of deleted digital data from a hard drive, and exceeded the expertise of local law enforcement personnel. Like *Bach*, there was no "traditional" search and seizure; the "property" searched was a hard drive which was in law enforcement's possession, and the materials seized were of a digital nature. Accordingly, no warrant was physically served on Defendant for the search of the contents of the video camera, and there was no confrontation or interaction of any sort between the Defendant and Mr. Baker. Bearing in mind the similarities, the Court will address several of the *Bach* factors to determine whether Mr. Baker's participation in the search of the video camera was reasonable under the Fourth Amendment.

First, the presence of an officer would not have aided the search in any way. Mr. Baker relied on his technical expertise, which the presence of an officer would not have helped. *See Bellville v. Town of Northboro*, 375 F.3d 25, 34 (1st Cir. 2004) (when a civilian is relying on his technical expertise and familiarity with a technological source, the presence of an officer "could not have supplanted [the civilian's] role"). On the contrary, the presence of an officer may have hindered or slowed Mr. Baker's analysis. Detective Steenblock testified that he sent the contents of the video camera to Mr. Baker in Mississippi (as opposed to having Mr. Baker travel to Iowa) because it would be "easier for [Mr. Baker]" to "do what he does best in his own environment." Furthermore, Mr. Baker would not have performed his analysis and recovery of the data any differently had an officer been present. *See Id.* (considering it important that the technician's

activities would have been identical with or without the presence of a law enforcement officer).

Second, Mr. Baker's technical expertise "far outweigh[ed]" that of law enforcement officers. In fact, Mr. Baker was asked to aid in the data salvage precisely because of his superior abilities in retrieving deleted and corrupted data. Also noteworthy is the fact that Detective Steenblock asked for Mr. Baker's assistance only after he had "exhausted his abilities as a forensic examiner," and even then Detective Steenblock and Mr. Baker spent several days working together before Detective Steenblock sent a copy of the data to Mr. Baker. It appears Detective Steenblock sent the hard drive to Mr. Baker only as a last resort.

In sum, Mr. Baker's participation in the "search" of the video camera and "seizure" of the deleted materials is reasonable under the Fourth Amendment. The Fourth Amendment does not require the presence of a law enforcement officer at the time of a search, and the presence of an officer in this case would not have helped and may have hindered Mr. Baker's analysis. There is also no evidence to indicate Mr. Baker would have performed his "search" any differently had an officer been present. Furthermore, Mr. Baker's technical expertise far outweighed that of law enforcement, and Detective Steenblock requested private assistance only after exhausting his capabilities. *See Bach*, 310 F.3d at 1067 (outlining the factors to consider in assessing the reasonableness of a search performed outside the presence of a law enforcement officer). For these reasons, the Court finds that the February 16 Search Warrant was properly executed.

### E. Was the March 30 Search Warrant Supported By Probable Cause?

The March 30, 2010 Search Warrant authorized the search of a cellular phone that had been provided to the police by Ryan Pearson, who had found the phone in a Wal Mart parking lot in Anamosa, Iowa. Pearson examined the contents of the phone, and reported to police that the phone contained a video of an older man videotaping a girl in the shower. Pearson told the officer that the girl had no pubic hair. Defendant contends that this

description of the explicit sexual conduct on the video is insufficient to establish probable cause.

As set forth above, probable cause is determined by a judge or magistrate, who makes a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238. In assessing the sufficiency of an affidavit in support of a search warrant, the Court uses a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citation omitted). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631.

Given the totality of the circumstances, the Court finds that the March 30 Search Warrant was supported by probable cause. The Affidavit stated that Pearson viewed a video of an older man videotaping a naked, prepubescent minor girl in the shower. The Affidavit further stated that Pearson believed the male in the video to be a former Wal Mart employee who was involved in an ongoing child pornography investigation. The Affidavit also indicated that Pearson described the male subject in the video, and his description matched a general description of Defendant. The totality of the circumstances supports a finding that there was a fair probability that the "lascivious exhibition of the genitals or pubic area" of a minor would be discovered on the cell phone. *See Id.* at 631. Therefore, the Court finds that probable cause existed for the issuance of the March 30, 2010 Search Warrant.[12]

### F. Does the Leon Good Faith Exception Apply?

Finally, the Government argues that the good faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in any event. For the reasons set forth above, the Court believes that it is unnecessary for the district court to address the good

---

[12] The Government argues that since the cell phone was lost and found, the March 30 search warrant was not necessary. Since I believe the March 30 warrant was valid, I have not addressed this issue.

faith exception, since there existed probable cause for both the state court Search Warrants and the federal Search Warrant. Nonetheless, the Court will address the issue in case the district court disagrees with its analysis on probable cause.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the magistrate's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge, "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia or probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923). Defendant contends that two of the four circumstances are applicable to the present case.[13] First, Defendant argues that the Affidavit in Support of the Application for the March 30 Search Warrant contained false statements meant to mislead the magistrate judge. Second, Defendant argues that both the February 8 and February 16 Search Warrants are lacking in probable cause, such that no reasonable police officer could have relied on their existence. The Court will address these arguments separately.

---

[13] Defendant's Brief also suggests that the February 8 Warrant was both "facially deficient" and signed by a judge who had "wholly abandoned his judicial role." However, Defendant abandoned those arguments at the instant hearing. As such, the Court will not address these arguments.

### 1.    Did the Affidavit for the Federal Warrant Knowingly Include False Statements?

Defendant argues that the Affidavit in support of the Application for the March 30 Search Warrant contained false statements or inaccurate statements. Defendant further argues that these false or inaccurate statements were meant to knowingly mislead the magistrate judge. Specifically, Defendant argues that Officer Ford's statement in her Affidavit that the cellular phone contained a video of a "naked, prepubescent minor girl"[14] was intentionally misleading. According to Defendant, this phrase was never included in the statement Pearson made to Deputy Sullivan, nor was it included in the statements Deputy Sullivan made to Officer Ford at the time he provided her with the cell phone. Because the first time the subject in the cell phone video is referred to as a "naked, prepubescent girl" is in Officer Ford's Affidavit, Defendant contends that Officer Ford intentionally used this phrase to influence the magistrate judge, despite having no evidence that the female was "prepubescent." In his motion, Defendant does not request a *Franks* hearing, but his argument suggests that analysis under *Franks* is necessary for making a determination on his motion to suppress evidence.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court concluded that if it is shown following a hearing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the false statement is necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded. *Id.* at 155-56. In *United States v. Snyder*, 511 F.3d 813 (8th Cir. 2008), the Eighth Circuit summarized the law regarding the circumstances under which a defendant is entitled to a hearing under *Franks*:

> Under *Franks* and its progeny, a defendant may challenge a search warrant on the grounds that the probable cause determination relied on an affidavit containing false statements

---

[14] *See* Government's Exhibit 3 at ¶ 3.

or omissions made knowingly and intentionally or with reckless disregard for the truth. To obtain a *Franks* hearing a defendant must make a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable cause, a requirement which is "not easily met." Thus, to prevail on a *Franks* claim the defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his [or her] warrant affidavit. The defendant must then show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood.

*Id.* at 816 (internal citations omitted).

In order to sustain his burden of proof on the first prong in *Franks*, Defendant must establish by a preponderance of the evidence that there are false statements in the search warrant application and supporting affidavit. *United States v. Stropes*, 387 F.3d 766, 771 (8th Cir. 2004). Defendant claims that Officer Ford's statement in her Affidavit that the female subject in the video was "a naked, prepubescent minor girl" was false because she had know way of knowing, based on the statements made to her, that the female was prepubescent. Specifically, Defendant points to the statement made by Pearson, who found the cell phone, and on whose statements Officer Ford based her Application for Search Warrant. Pearson's written statement describes the female subject only as "a girl." (Defendant's Exhibit A-11.)

In her testimony at the instant hearing, Officer Ford explained her use of the word "prepubescent" by recounting a conversation she had with Deputy Sullivan on March 19, 2010. In this conversation, Deputy Sullivan told Officer Ford that he asked Pearson how young the girl in the video was, to which Pearson responded that the girl had no pubic hair. From this conversation, Officer Ford concluded that the female in the video was a prepubescent girl. The Defendant correctly notes that this conversation between Deputy

Sullivan and Officer Ford was never mentioned in either the Affidavit in support of the Application for Search Warrant or Officer Ford's Supplemental Report.[15]

However, when assessing the good faith of Officer Ford in describing the girl as "prepubescent," the Court looks to the totality of the circumstances, including any information known to Officer Ford but not included in the Affidavit. *United States v. Rodriguez*, 484 F.3d 1006, 1011 (8th Cir. 2007) (citing *United States v. Chambers*, 987 F.2d 1331, 1335 (8th Cir. 1993). Thus, in considering whether Officer Ford made this statement "knowingly and intentionally" or "with reckless disregard for the truth," the Court is permitted to consider the conversation she had with Deputy Sullivan regarding the female subject's age.

Considering this information, the Court concludes that Officer Ford did not knowingly and intentionally, or with reckless disregard for the truth, make a false statement about the age of the girl in the cell phone video. Ideally, Officer Ford would have described her conversation with Deputy Sullivan about the subject's lack of pubic hair in both her Supplemental Report and her Affidavit in support of the Application for Search Warrant, and not simply described the female subject in the video as prepubescent. However, this conclusion was not unreasonable based on the information provided to Officer Ford in her conversation with Deputy Sullivan. As such, the Court does not believe Officer Ford "knowingly and intentionally" made a false statement in her Affidavit because she reasonably believed, based on the information available to her at the time, that the girl described in the video was prepubescent.

Furthermore, Officer Ford's inclusion of the term "prepubescent" in her Affidavit was not done with a reckless disregard for the truth. The Court is not convinced that the use of this term was anything more than a mere oversight, which does not rise to the level of reckless disregard for the truth, as required by *Franks*. *See United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008) (to constitute reckless disregard for the truth the

---

[15] *See* Defendant's Exhibit A-10 (Officer Ford's Supplemental Report).

24

officer "must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported") (quoting *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1995)). Here, Officer Ford simply substituted the term "prepubescent" for the description that the subject of the video lacked pubic hair. Therefore, the Defendant has not met his burden of proof in showing Officer Ford knowingly and intentionally, or with reckless disregard for the truth, made false statements in her Affidavit so as to satisfy the *Franks* requirements and disallow the *Leon* good faith exception.[16]

### 2. *Were the State Search Warrants "So Lacking" in Probable Cause?*

Defendant contends that the February 8 and February 16 Search Warrants were "complete[ly] lacking in indicia of probable cause" so as to render reliance on these warrants entirely unreasonable. Specifically, Defendant argues that the February 8 Warrant failed to sufficiently detail the "lascivious exhibition of the genitals or pubic area" in the alleged video at the Defendant's residence. Defendant also contends that the February 16 Warrant relied on statements made by a CI, but failed to include information regarding the CI's credibility. As set forth above, the Court has concluded that there existed probable cause for the issuance of both the February 8 and February 16 Search Warrants. It necessarily follows that an officer could reasonably believe that the warrants were supported by probable cause.

Even if the District Court were to determine that probable cause did not exist for either of these Warrants, reasonable officers still could have relied on their validity. If the District Court finds the February 8 Warrant lacked a sufficient description of the explicit conduct on the alleged video, the executing officers' reliance on the magistrate's conclusion that the description was sufficient would not have been unreasonable. The

---

[16] Since the first prong of *Franks* has not been met, it is unnecessary to consider the second prong; *i.e.*, whether probable cause would exist absent the challenged language. *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006).

Affidavit described a young female lying on a bed without any underwear on, with her hand near her vaginal area, being manipulated by another person's hand, and the use of a vibrator. A reasonable officer could have relied on the magistrate's determination that this description supported a finding of probable cause.

Furthermore, in assessing whether Officer Ford's reliance on the February 16 Warrant was reasonable, the Court can consider information known to the officer, but not presented to the issuing judge. *See Grant*, 490 F.3d at 633 (citing *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)). In this case, Officer Ford had previously assessed the CI's credibility in her Application for the February 8 Warrant. While this credibility assessment was not included in her Application for the February 16 Warrant, Officer Ford had reason to believe the CI was reliable because the magistrate had previously issued a Search Warrant based on the CI's information and many of the CI's statements were corroborated by a search of the Defendant's residence pursuant to the February 8 Warrant. Therefore, Officer Ford's reliance on the validity of this Warrant was not unreasonable. Accordingly, the Court finds that the February 8 and February 16 Search Warrants were not so lacking in probable cause as to sustain an exception to the *Leon* good faith rule.[17]

## V. CONCLUSION

In the Motion to Suppress, Defendant argues that the Search Warrants issued on February 8, 2010, February 16, 2010, and March 30, 2010 were not supported by probable cause. For the reasons set forth above, I disagree. Even if probable cause was lacking for the issuance of these warrants, I believe the evidence seized is nonetheless

---

[17] If the district court concludes that the *Leon* good faith exception is applicable, then it need not address the issue of whether the Search Warrants were supported by probable cause. *See e.g., United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis.").

admissible pursuant to the *Leon* good faith exception, as urged by the Government. Defendant further argues that the February 16, 2010 Search Warrant was improperly executed. Again, for the reasons set forth above, I disagree. Accordingly, Defendant's Motion to Suppress should be denied.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Motion to Suppress (docket number 31) filed by Defendant on June 2, 2010.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on June 21, 2010.*

DATED this ___7th___ day of July, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA